AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Grey HP Laptop<br>Seizure No. 2025250400112601-0005<br>("Target Device") | )<br>)<br>)<br>)<br>)<br>) Case No. **25mj3959** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ **Southern** _____ District of _____ **California** _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kevin Day, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means)*.

Date: July 21, 2025

*Judge's signature*

City and state: San Diego, California

Hon. David D. Leshner, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Grey HP Laptop
> Seizure No. 2025250400112601-0005
> (**"Target Device"**)

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## ATTACHMENT B
### ITEMS TO BE SEIZED

Authorization to search the laptop described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the laptop for evidence described below. The seizure and search of the laptop shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the laptop will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 5, 2025, up to and including July 19, 2025:

a.  tending to indicate efforts to import controlled substances from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of controlled substances from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

**AFFIDAVIT**

I, Special Agent Kevin Day, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.    I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Grey HP Laptop
>
> Seizure No. 2025250400112601-0005
>
> (“**Target Device**”)

as further described in Attachment A to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Alain Isai RIVAS Contreras (“Defendant”) for importing approximately 48.62 kilograms (107.18 pounds) of cocaine from Mexico into the United States.  The **Target Device** is currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

2.    The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

3.    I have been employed as a Special Agent with Homeland Security Investigations (HSI) since February 2016. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.     During my law enforcement career, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.     Based upon my training and experience in law enforcement, and consultations with law enforcement officers experienced in firearms, drug, and human trafficking investigations, I am also aware that:

   a. Drug traffickers will use digital devices like cellular telephones, tablets, and laptop computers because they are mobile, and they have instant access to telephone calls, text, web, email, and voice messages;

   b. Drug traffickers will use digital devices like cellular telephones, tablets and laptop computers because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

   c. Drug traffickers and their accomplices will use digital devices like cellular telephones, tablets and laptop computers because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

   d. Drug traffickers will use digital devices like cellular telephones, tablets and laptop computers to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

   e. Drug traffickers will use digital devices like cellular telephones, tablets and laptop computers to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border

crossings;

f. The use of digital devices like cellular telephones, tablets and laptop computers by traffickers tends to generate evidence that is stored on the digital devices, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

g. Individuals involved in drug trafficking often utilize devices like cellular telephones, tablets and laptop computers with photograph and video capabilities to take and send photographs and videos of other members of criminal organizations, firearms, drugs, criminal proceeds, and assets purchased with criminal proceeds.

6. Based upon my training, experience in law enforcement, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that laptop computers and cellular telephones (including their SIM card(s)), tablets, and laptop computers can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone or laptop computer. Specifically, searches of laptops of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.  On July 19, 2025, at approximately 9:30 AM, Alain Isai RIVAS Contreras, ("RIVAS"), a Mexican national, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane #13. RIVAS was the driver, sole occupant, and registered owner of a 2018 Kia Forte ("the vehicle") bearing Mexico license plates.

8.  A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the floor of the vehicle.

9.  A Customs and Border Protection Officer (CBPO) received two negative Customs declarations from RIVAS. RIVAS stated he was crossing the border to go to go shopping in San Ysidro, California. During further inspection of the vehicle, CBPO noticed non-factory compartment in the floor area of the vehicle. The CBPO referred the driver to secondary inspection.

10.  A CBPO operating the Z-Portal X-Ray machine detected anomalies in the floor and undercarriage area of the vehicle.

11.  Further inspection of the vehicle resulted in the discovery of 40 packages

concealed in the floor and passenger side airbag area of the vehicle, with a total approximate weight of 48.62 kgs (107 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of cocaine.

12.    RIVAS was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

13.    The Target Device was found and seized by a Customs and Border Protection Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and inventory all the property seized from the Defendant and her Vehicle. The Defendant was the driver and sole occupant of the Vehicle and had dominion and control of all the contents at the time of arrest. The laptop was located on the back of the Vehicle.

14.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning on July 5, 2025, up to and including July 19, 2025.

# METHODOLOGY

## Procedures For Electronically Stored Information as to the Target Device

15. With the approval of the Court in signed this warrant, agents executing this search warrant will employ the following procedures regarding computers or other electronic storage devices, including electronic storage media, that may contain data subject to seizure pursuant to this warrant:

## Forensic Imaging as to Target Device

a.      After securing the premises, or if sufficient information is available pre-search to make the decision, the executing agents will determine the feasibility of obtaining forensic images of electronic storage devices while onsite. A forensic image is an exact physical copy of the hard drive or other media. A forensic image captures all the data on the hard drive or other media without the data being viewed and without changing the data. Absent unusual circumstances, it is essential that a forensic image be obtained prior to conducting any search of the data for information subject to seizure pursuant to this warrant. The feasibility decision will be based upon the number of devices, the nature of the devices, the volume of data to be imaged, the need for and availability of computer forensics specialists, the availability of the imaging tools required to suit the number and nature of devices found, and the security of the search team. The preference is to image onsite if it can be done in a reasonable amount of time and without jeopardizing the integrity of the data and the agents' safety. The number and type of computers and other devices and the number, type, and size of hard drives are of critical importance. It can take several hours to image a single hard drive - the bigger the drive, the longer it takes. As additional devices and hard drives are added, the length of time that the agents must remain onsite can become dangerous and impractical.

b.     If it is not feasible to image the data on-site, computers and other electronic storage devices, including any necessary peripheral devices, will be transported offsite for imaging. After verified images have been obtained, the owner of the devices will be notified, and the original devices returned within forty-five (45) days of seizure absent further application to this court.

**Identification and Extraction of Relevant Data**

c.     After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software. There are thousands of different hardware items and software programs, and different versions of the same programs, that can be commercially purchased, installed, and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office or home environment can be different with respect to configuration, including permissions and access rights, passwords, data storage, and security.  It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

d.     Analyzing the contents of a computer or other electronic storage device, even without significant technical challenges, can be very challenging.  Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process for several reasons. The computer may have stored metadata and other information about a relevant electronic record – e.g., who created it, when and how it was created or downloaded or copied, when it was last accessed, when it was last modified, when it was last printed, and when it was deleted.  Keyword searches may also fail to discover relevant electronic records, depending on how the records were created, stored, or used.  For example,

keywords search text, but many common electronic mail, database, and spreadsheet applications do not store data as searchable text. Instead, the data is saved in a proprietary non-text format. Documents printed by the computer, even if the document was never saved to the hard drive, are recoverable by forensic programs because the printed document is stored as a graphic image. Graphic images, unlike text, are not subject to keyword searches. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computers or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting at the keyboard.

e.    It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded, or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users that generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files

created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

f.    Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has become mind-boggling. For example, a single megabyte of storage space is roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data. And, this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

g.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including hashing tools to identify data subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process, accordingly, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty (120) days of this warrant, absent further application to this court.

h.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

**GENUINE RISK OF DESTRUCTION**

16.    Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

17.    Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is not uncommon for technically sophisticated criminals to use encryption, programs to destroy data that can be triggered remotely or by a pre-programmed event or keystroke and sophisticated techniques to hide data. In this case, the target currently is in custody; however, it is possible that the target could request other individuals to delete data remotely.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

18.    Law enforcement has not previously attempted to obtained a search warrant for this device.

//
//
//
//
//
//
//
//
//
//

**CONCLUSION**

19.     Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Kevin Day
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 21st day of July, 2025.

Honorable David D. Leshner
United States Magistrate Judge